IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| ROBERTA M. ACORD,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration,<br><br>Defendant. | CV-12-26-GF-SEH-RKS<br><br>**FINDINGS &<br>RECOMMENDATIONS** |

## I. SYNOPSIS

Ms. Roberta Acord seeks judicial review of the decision of Defendant,

Commissioner of Social Security ("Commissioner"), denying her application for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401-434.

## II. JURISDICTION

Jurisdiction vests under 42 U.S.C. § 405(g). The case was referred to the

undersigned for the submission of proposed findings and recommendations by

United States District Judge Sam E. Haddon on June 4, 2012. C.D. 9. Now ripe for disposition are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. C.D. 13 & 16. Plaintiff's motion should be denied, Defendant's motion should be granted and this matter should be dismissed.

### III. STATUS

Ms. Acord filed for DIB and SSI on February 10, 2009, alleging a disability onset date of January 1, 1999. Tr. at 123-126. Her claims were denied initially on October 2, 2009, Id. at 78-80, and again after a request for reconsideration on February 17, 2010. Id. at 81-82. Ms. Acord timely requested a hearing on May 13, 2010. Id. at 87-88. The hearing was held March 23, 2011. Id. at 33-72. At that hearing, Ms. Accord agreed to amend her alleged onset date to April 12, 2009. Tr. 13.

The Administrative Law Judge ("ALJ") determined that that Ms. Acord was not disabled in a decision issued May 11, 2011. Id. at 13-26. The Appeals Council denied review on February 13, 2012. Id. at 1-5. Ms. Acord filed a complaint challenging the Commissioner's decision, in accordance with 42 U.S.C. § 405(g), on March 30, 2012.

### IV. STANDARD OF REVIEW

The Court has discretion to affirm, modify, or reverse the Commissioner's decision with or without a rehearing. 42 U.S.C. § 405(g). The Commissioner's decision may be set aside only where the decision is not supported by substantial evidence or where the decision is based on legal error. Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984) (citing Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." Desrosiers v. Sec. of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). While the Court may not substitute its findings for those of the Commissioner, Palmer v. Celebrezza, 334 F.2d 306, 308 (3rd Cir. 1964), it may reject the findings not supported by the record.

## V. ANALYSIS

**Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant proves by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated. Id. At step one, a claimant must show that he or she is not currently engaged in substantial gainful activity. Id. At step two the claimant must demonstrate that she has a severe impairment. Id. At step three the ALJ must determine whether a claimant's impairment meets or equals the criteria of the

Listing of Impairments.  Step four provides that if the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments.  Id. If that case is made, at step five the burden shifts to the Commissioner to prove that the claimant can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience, and residual functional capacity ("RFC").  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

**ALJ's determination**

At step one, the ALJ determined that Ms. Acord has worked part time since the alleged disability onset date, but her work did not rise to the level of substantial gainful activity.  TR. 15.  At step two, the ALJ determined Ms. Acord has a "severe" impairment based on work limitations arising from diabetes mellitus.  TR. 16-17.  The ALJ held that Ms. Acord's depression does not constitute a severe impairment because it imposes no more than minor limitations on her ability to function. TR. 16.

At step three, the ALJ concluded that Ms. Acord's impairments do not meet those described in the Listing of Impairments at 20 CFR Part 404, Subpart P, Appendix 1.  TR.17.  Specifically, Ms. Acord had not shown evidence of an initial

diagnosis of diabetes with neuropathy; acidosis at least once every two months; or retinitis proliferations. TR. 17. Because Ms. Acord did not satisfy those criteria for disability, the ALJ proceeded to step four.

The ALJ's findings at step four are the primary point of contention in this case. Although the ALJ determined that Ms. Acord does have medical impairments that could reasonably be expected to cause some of her alleged symptoms, he did not accept her claims as to the intensity, persistence and limiting effects of those symptoms. TR. 21. Thus, the ALJ found that Ms. Acord has the residual functioning capacity to perform work at light exertional levels, including her past relevant work. Tr. 24. The ALJ determined that Ms. Acord is therefore not disabled within the meaning of the Social Security Act. TR. 17.

**Parties' contentions**

Ms. Acord contends that the ALJ's determination is not supported by substantial evidence. C.D.14, p. 8. Specifically, she argues that the ALJ did not give adequate weight to her treating physician, Dr. Barry Cohan, who opined that Ms. Acord is disabled and unable "to do much more than care for herself." C.D.14, p.12. Ms. Acord also argues that the ALJ did properly credit Ms. Acord's own testimony regarding the extent of her pain and limitations. C.D.14, p.13. Finally, Ms. Acord argues that the ALJ's reliance on a vocational expert's testimony was

improper because the testimony was not supported by substantial evidence and does not reflect Ms. Acord's particular limitations. C.D.14.,p. 18.

The Commissioner counters that the ALJ's determination is supported by substantial evidence and should be affirmed. C.D.17, p.3. The Commissioner contends that the ALJ properly rejected Dr. Cohan's conclusions because they were inconsistent with Dr. Cohan's own progress notes, ignored the fact that Ms. Acord was working part time, and showed no evidence of diabetes-related neurological, musculoskeletal or visual impairment. C.D.17, p.7. The Commissioner also argues that the ALJ was justified in discrediting Ms. Acord's testimony regarding the extent of her pain and limitations. C.D.17, p.4. The Commissioner points to evidence in the record that Ms. Acord has not consistently followed her prescribed course of treatment, and that Ms. Acord works part time and carries out everyday activities like using a computer and walking to a coffee shop. C.D.17, pp.5-6. Finally, the Commissioner contends that the ALJ properly relied on a vocational expert's testimony because the vocational expert considered all of Ms. Acord's established limitations. C.D.17, pp.8-9.

**Medical Evidence**

Ms. Acord, 47, was diagnosed with diabetes mellitus in 1999, and by the following year required insulin to treat the disease. TR. 427. Diabetes-related

health emergencies required her hospitalization in 2008, June 2010, and July 2010. Tr. 427. The most serious of these incidents was in 2008, when she was found comatose in her home with an extremely high blood sugar. Tr. 273. In each case, Ms. Acord responded well to treatment and fully recovered. Tr. 291; TR. 384; TR. 418.

Ms. Acord smokes about one pack of cigarettes per day. Tr. 427. She also uses marijuana medicinally. Tr. 60. She has been prescribed Lantus and NovaLog to maintain her blood sugar. Tr. 427. However, the record reflects a history of poor compliance with treatment instructions. Tr. 428 (diabetes "chronically poorly controlled" in part because of patient's dietary habits and dosing of insulin); Tr. 417 ("patient tends to dose her insulin as she sees fit"); Tr.389 ("She doesn't write down her blood sugars very well.").

Ms. Acord occasionally works in a variety of capacities in a restaurant, or did at the time of her hearing. Tr. 41-42. She testified that her diabetes and inability to handle stress severely limit her work capacity. Tr. 46. Ms. Acord's other activities include reading, using the computer to socialize and research, and walking to a coffee shop to meet friends twice per week. Tr. 57.

Dr. Cohan, an endocrinologist, began treating Ms. Acord for diabetes in October 2010. After the initial meeting, Dr. Cohan stated in his report that he

considered Ms. Acord permanently disabled. Tr. 428. In March 2011, Dr. Cohan opined in a letter that Ms. Acord, "is unable, due to the nature of her diabetes, to perform any meaningful work." Tr.429. He said she is "not really able to function in day-to-day life" and needed to devote all her energies to managing her diabetes. Tr. 429.

Ms. Acord also asserts that she is unable to work due to exertional and non-exertional limitations. Tr. 87. She testified at the administrative hearing that even the everyday stress of most work environments causes her debilitating nausea. Tr. 43-46. Ms. Acord also testified that she experiences foot pain and chronic shoulder pain. Tr. 54-56.

At the request of Disability Determination Services, Dr. John Cey and Dr. William Fernandez evaluated Ms. Acord's medical record. Tr. 22. Both doctors determined Ms. Acord is able to perform some work. Ex. 3F; Ex. 8f.

**Credibility Determination**

The ALJ is required to resolve any conflicts in the claimant's medical record. Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ considers the following factors in evaluating medical opinions: the examining and treatment relationship with the claimant, the support provided for the opinion, the source's medical specialty, the opinion's consistency with other evidence in the

record, and any other factors supporting or contradicting the opinion. 20 C.F.R. 404.1527(d).

### A. Dr. Barry Cohan

Treating sources' opinions are generally entitled to more weight than non-treating physicians. 20 C.F.R. 404.1527(c)(2). Examining sources' opinions are given greater weight than non-examining sources. 20 C.F.R. 404.1527(c)(1). If a treating source's opinion is uncontradicted, the ALJ must give clear and convincing reasons for rejecting the opinion. Carmickle, 533 F.3d at 1164. When the treating source's opinion is contradicted by another acceptable medical source, the ALJ must have specific and legitimate reasons for rejecting the opinion. Id.

Here, Dr. Cohan's opinion is contradicted by other acceptable medical sources. Drs. Cey and Fernandez both opined that Ms. Acord is able to perform some work. Ex. 3F; Ex. 8f. The ALJ held that Cey and Fernandez qualify as acceptable medical sources because they are trained to adjudicate claims of disability under the Social Security Act, Tr. 22-23, and Acord does not dispute the qualification. Because Dr. Cohan's opinion is contradicted by acceptable medical sources, the ALJ needed to have specific and legitimate – but not clear and convincing – reasons to reject Dr. Cohan's determinations. Carmickle, 533 F.3d at 1164.

The ALJ provided specific and legitimate reasons to reject Dr. Cohan's determinations. The ALJ noted that Dr. Cohan was the only healthcare provider who determined that Ms. Acord was unable to work. Tr. 22. The ALJ also noted that Dr. Cohan made this determination after a single visit, and did not appear to consider subsequent improvements in Ms. Acord's condition. Tr. 22. Additionally, the ALJ observed that Ms. Acord was, in fact, working part time when Dr. Cohan determined she was completely unable to work, casting suspicion on his conclusion. Tr. 22. The ALJ did not err in rejecting Dr. Cohan's opinion because his specific and legitimate reasons for doing so are supported by substantial evidence.

B.   Ms. Acord

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. at 1036. "Thus, the ALJ may not reject subjective symptom

testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Id.; see also Reddick, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). If the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036.

Here, the ALJ concluded there was evidence of an impairment – diabetes and its effects – that could reasonably be expected to cause the symptoms from which Ms. Acord claims to suffer. TR. 21. In the second step of the test, however, the ALJ determined that Ms. Acord's testimony as to the extent of her symptoms was not credible. TR. 21. The ALJ did not indicate that Ms. Acord was malingering. Therefore the ALJ required clear, specific and convincing reasons to reject Ms. Acord's testimony. Lingenfelter, 504 F.3d at 1036.

The ALJ determined that Ms. Acord's statements regarding the limiting effects of her symptoms were "not credible to the extent they are inconsistent with the . . . residual functioning capacity assessment and the medical evidence of record." Tr. 21. In the ALJ's estimation, the record indicated that Ms. Acord's

limitations were primarily the result of her chronic failure to manage her diabetes. Tr. 21.

While Ms. Acord offered explanations for the poor management of her condition, the ALJ pointed out several contradictions between her explanations and the medical record. Tr. 21. Specifically, the ALJ pointed out that Ms. Acord described herself as a "brittle diabetic" (a diabetic whose condition does not respond well to management and treatment), but medical records indicated that she responded well to treatment and was able to maintain consistent glucose levels when she followed doctors' recommendations as to diet and insulin use. Tr. 21. Similarly, while Ms. Acord testified that she was unable to follow an appropriate medicinal and dietary routine due to budgetary constraints, the ALJ observed that Ms. Acord poorly managed her diabetes even when she'd had greater income and despite the availability of state assistance to pay for insulin. Tr. 21. The ALJ noted, for example, that a nurse practitioner who treated Ms. Acord reported that she "tends to dose her insulin as she sees fit." TR. 18. The ALJ also recognized that Ms. Acord smoked cigarettes, despite the negative impact on her diabetes, and failed to keep a diary of blood sugar readings and insulin use. TR. 18.

It was appropriate for the ALJ to consider evidence of Ms. Acord's failure to follow medical advice in his credibility determination. See Fair v. Bowen, 885 F.2d

587, 603 (9th Cir.1989) (an ALJ may rely on failure to follow a prescribed course of treatment). The ALJ also noted that Ms. Acord was, in fact, working part time and had been working regularly since her diagnoses as a diabetic, which was inconsistent with her testimony that she was unable to work. Tr. 21.

The ALJ provided clear, specific, and convincing reasons as to reject Ms. Acord's testimony as to the extent of her limitations, and those reasons are supported by substantial evidence. The determination was not in error. Lingenfelter, 504 F.3d at 1036.

### C. Vocational Expert

The ALJ presented a vocational expert with a hypothetical worker with Ms. Acord's age, education and work experience; who needs to avoid exposure to extreme temperatures, vibrations, and dangerous conditions; was unable to climb a ladder; and could not tolerate a stressful environment. Tr. 68-70. The vocational expert stated that someone with those restrictions could work as an office helper or appointment clerk. Tr. 70.

Ms. Acord contends that the hypothetical does not consider pain, and therefore does not reflect all of Ms. Acord's limitations. C.D.14, p. 18. The Commissioner counters that the hypothetical included all of Ms. Acord's credible limitations. C.D.17, p. 8.

The hypothetical an ALJ poses to a vocational expert must set out *all* the limitations and restrictions of the particular claimant. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). A vocational expert opinion that fails to take into account a claimant's limitations is defective and lacks evidentiary value. Id. However, the ALJ has discretion to determine what restrictions actually apply to the claimant. Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1980). That is, the ALJ need not include limitations in the hypothetical if the record does not reflect that the claimant actually has those limitations. Id.

Here, substantial evidence supports the ALJ's decision to exclude pain as a limitation. In the administrative hearing Ms. Acord testified that she was primarily limited by her inability to cope with stress. Tr. 43. She testified in regard to secretarial work, which she has done in the past, "If there was no stress I wouldn't have a problem." Tr. 45. Aside from nausea and dizziness, Ms. Acord said fluctuations in her blood sugar did not cause other physical symptoms. Tr. 54.

Ms. Acord mentioned in the hearing that her foot aches when she is standing, and testified at greater length that she has a chronic ache in her shoulder. Tr. 54-56. However, the record does not appear to include any other reference to foot or shoulder pain, and Ms. Acord testified that she had never received treatment for the pain. Tr. 59. Her treating physician's notes make no mention of pain. Tr. 424-429.

To the extent Ms. Acord does have shoulder pain, her testimony indicates it is not caused by activity but rather is worst when she is lying down. Tr. 56. Considering the record as a whole, substantial evidence supports the ALJ's decision to exclude pain as a limitation in the hypothetical. Martinez v. Heckler, 807 F.2d at 775. The ALJ properly relied on the vocational expert's determination. Valentine, 574 F.3d at 690.

## VI. CONCLUSION

The ALJ's determination that Ms. Acord is not disabled within the meaning of the Social Security Act is supported by substantial evidence and is not based on legal error. There was the conflicting evidence as to Ms. Acord's ability to work. It is the ALJ's duty to resolve those conflicts. He did so in this case under the appropriate standards.

For the foregoing reasons, **IT IS HEREBY RECOMMENDED:**

1. Plaintiff's Motion for Summary Judgment be denied.
2. The Commissioner's Motion for Summary Judgment be granted.
3. This matter be dismissed pursuant to Federal Rule of Civil Procedure 58.

NOTICE OF RIGHT TO OBJECT TO FINDINGS &

RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within fourteen (14) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 17th day of October, 2012.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge